IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ZULA BELL, DERRELL FELIX,           §
JULIA JONES, CARLA JOSEPH,          §
KIMBERLY LEWIS, GARRY MALONE,       §
LLOYD NICHOLSON, LINDA              §
NORTHRUP, and JOHN PARKER,          §
                                    §
            Plaintiffs,             §       CIVIL ACTION NO. H-10-2179
                                    §
v.                                  §
                                    §
YWCA, USA and YWCA OF               §
GREATER HOUSTON,                    §
                                    §
            Defendants.             §

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Zula Bell, Derrell Felix, Julia Jones, Carla Joseph, Kimberly Lewis, Garry Malone, Lloyd Nicholson, Linda Northrup, and John Parker bring this action against defendants, Young Women's Christian Association of the United States of America, Inc. ("YWCA, USA"), and Young Women's Christian Association of Greater Houston, Inc. ("YWCA Houston"), for violation of the minimum wage provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201-209. Pending before the court are Defendant Young Women's Christian Association of the United States of America, Inc.'s Motion to Dismiss ("YWCA, USA's Motion to Dismiss") (Docket Entry No. 7); Plaintiffs' Response to Defendant YWCA, USA's Motion to Dismiss ("Plaintiffs' Response") (Docket Entry No. 10); and Defendant Young Women's Christian Association of

the United States of America, Inc.'s Reply in Support of Its Motion to Dismiss ("YWCA, USA's Reply") (Docket Entry No. 11).  For the reasons stated below, YWCA, USA's motion to dismiss will be granted.

## I.  Plaintiffs' Factual and Legal Allegations[1]

Plaintiffs allege that they are Texas residents who were hired at different times by the YWCA as independent contractors to deliver meals on wheels in Houston.  Plaintiffs were paid $55 per day pursuant to an Independent Contractor Agreement ("Agreement") that required them to purchase or lease their own vehicles and pay all costs associated with the delivery of meals.  Costs that plaintiffs were required to pay included vehicle registration fees, fuel, oil, tires, repairs, tolls, taxes, and insurance.  Plaintiffs allege that they were required to report to work at a specified time, which was typically 8:30 a.m. Monday through Friday, and that they typically completed their routes by 2:00 p.m.  Plaintiffs allege that they were required to sign YWCA's "Auto Fleet Safety Program," which labeled them as "employees" and subjected them to "unnecessary restraints."[2]

Plaintiffs allege that in addition to delivering meals, they were commonly required to perform other tasks not included in the

---

[1]Plaintiffs' Original Complaint, Docket Entry No. 1, pp. 2-5 ¶¶ 8-27.

[2]Id. at 4 ¶ 21.

Agreement.  Other tasks that plaintiffs allege they were required
to perform include attending periodic meetings that could be held
as frequently as two or three times a week, unloading trucks in
which meals were delivered to the YWCA, and packing components of
meals such as milk and bread and butter in coolers for distribution
to other drivers.  Plaintiffs allege that they were also required
to create detailed reports, conduct satisfaction surveys, and
perform other administrative tasks on their own time.

     Plaintiffs allege that other YWCA locations have designated
meals-on-wheels drivers as "employees" instead of "independent
contractors," and that the defendants in this action "have known or
should have known that drivers delivering home meals and performing
other duties were paid at least minimum wage.  As such, Defendants'
actions were willful."[3]  Plaintiffs allege that beginning in March
of 2010 defendants failed to pay them on time, that on or about
May 7, 2010, they failed to deliver meals, and that on or about
May 10, 2010, defendants told them that their services were no
longer needed.  Plaintiffs allege that they have not been able to
find other employment and that the Texas Workforce Commission will
not approve unemployment benefits for them because defendants have
not paid unemployment insurance for them because they were
independent contractors.

_____

     [3]Id. at 4-5 ¶ 23.

Plaintiffs allege that "[b]ecause Defendants failed to pay minimum wage from June 18, 2007 to May 11, 2010, they willfully violated the minimum wage provisions of the FLSA."[4]

## II.  <u>Standard of Review</u>

When a foreign defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'"  <u>Quick Technologies, Inc. v. Sage Group PLC</u>, 313 F.3d 338, 343 (5th Cir. 2002), <u>cert. denied</u>, 124 S.Ct. 66 (2003) (quoting <u>Mink v. AAAA Development LLC</u>, 190 F.3d 333, 335 (5th Cir. 1999)).  "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'"  <u>Id.</u> at 343-44 (quoting <u>Wilson v. Belin</u>, 20 F.3d 644, 648 (5th Cir.), <u>cert. denied</u>, 115 S.Ct. 322 (1994)).  "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'"  <u>Id.</u> at 344 (quoting <u>Thompson v. Chrysler Motors Corp.</u>, 755 F.2d 1162, 1165 (5th Cir. 1985)).  The court must accept as true uncontroverted

---

[4]<u>Id.</u> at 5 ¶ 29.

allegations in the plaintiff's complaint and must resolve factual conflicts in the plaintiff's favor, but need not credit conclusory allegations even if uncontroverted.  See Panda Brandywine Corp. v. Potomac Electric Power Co., 253 F.3d 865, 869 (5th Cir. 2001). "Absent any dispute as to the relevant facts the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law." Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 418 (5th Cir. 1993).

### III.  Analysis

Asserting that it is a corporation organized under the laws of New York with its principal office in Washington, D.C., defendant YWCA, USA moves to dismiss all the claims asserted against it in this action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction because plaintiffs have failed to carry their burden of presenting prima facie evidence that YWCA, USA purposefully established minimum contacts with Texas that are sufficient to give rise to personal jurisdiction.  Plaintiffs respond that YWCA, USA's contacts with Texas are sufficient to establish personal jurisdiction because YWCA, USA

> actively does business over the internet through Persimmon Boutique by entering into contracts with residents of Texas.  These transactions involve the knowing and repeated transmission of computer files over the internet.
>
> In addition, YWCA USA maintains employment information, trains, and supports YWCA Houston on employment related matters. [Plaitiffs' Ex. A, C & E]. When a viewer clicks on the "employment" tab of YWCA

Houston's website, it is redirected to YWCA USA's website that lists available positions at local associations throughout the United States. [See Plaintiffs' Ex. E]. These are sufficient facts to support general and specific jurisdiction over YWCA USA.[5]

## A.   Applicable Law

Exercise of personal jurisdiction over a nonresident defendant comports with federal due process guarantees when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 66 S.Ct. 154, 158 (1945).  Once a plaintiff satisfies these two requirements a presumption arises that jurisdiction is reasonable, and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Burger King Corp. v. Rudzewicz, 105 S.Ct. 2174, 2185 (1985).  See also Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 271 (5th Cir. 2006) (if plaintiffs satisfy their two-pronged prima facie burden, "the burden shifts to the [defendant] to defeat jurisdiction by showing that its exercise would be unfair or unreasonable").

---

[5]Plaintiffs' Response, Docket Entry No. 10, pp. 4-5.

B.   **Application of the Law to the Factual Allegations**

1.   <u>Minimum-Contacts Analysis</u>

The purpose of a minimum-contacts analysis is to protect nonresident defendants from being haled into court when their relationship with Texas is too attenuated to support jurisdiction. The court's analysis focuses on the defendants' activities and expectations, and jurisdiction cannot be asserted over defendants absent evidence that the defendants purposefully availed themselves of the privilege of conducting activities in Texas, thus invoking the benefits and protections of Texas laws. <u>Hanson v. Deckla</u>, 78 S.Ct. 1228, 1239 (1958). A defendant has minimum contacts with Texas if "[t]he nature and quality of a defendant's contacts with the forum . . . justify the conclusion that defendant should have reasonably anticipated being haled into court in the forum state." <u>Coats v. Penrod Drilling Corp.</u>, 5 F.3d 877, 884 (5th Cir. 1993), <u>cert. denied</u>, 114 S.Ct. 1303 (1994) (citing <u>World-Wide Volkswagen Corp. v. Woodson</u>, 100 S.Ct. 559, 567 (1980)). Personal jurisdiction based on a minimum-contacts analysis may be either specific or general. <u>Id.</u> Plaintiffs' allegations are based on the assertion of both specific and general jurisdiction.[6]

---

[6]Plaintiffs' Response, Docket Entry No. 10, p. 5 ("The[re] are sufficient facts to support general and specific jurisdiction over YWCA USA.").

-7-

(a)   Specific Jurisdiction

Courts may exercise specific jurisdiction over nonresident defendants if plaintiffs make prima facie showings that (1) the nonresident defendant has minimum contacts with the forum state, and (2) each cause of action arises or results from the nonresident defendant's contacts with the forum state.  See Seiferth, 472 F.3d at 271 (quoting Nuovo Pignone, 310 F.3d at 378.  See also ICEE Distributors, Inc. v. J&J Snack Foods Corp., 325 F.3d 586, 591 (5th Cir. 2003) (courts may exercise specific jurisdiction over a non-resident defendant only if the claims asserted arise or result from the defendant's contact with the forum).  "For specific jurisdiction, the defendant must have purposely directed his activities at the resident of the forum, and the litigation must result from the alleged injuries that arise out of or relate to the defendant's activities directed at the forum."  Coats, 5 F.3d at 884 (citing Burger King, 105 S.Ct. at 2183).  "The focus is on the relationship between the defendant, the forum, and the litigation."  Id. (citing Burger King, 105 S.Ct. at 2183).  "The appropriate inquiry is whether the defendant purposefully availed [itself] of the privilege of conducting activities in-state, thereby invoking the benefits and protections of the forum state's laws."  Id. (quoting Bullion v. Gillespie, 895 F.2d 213, 216 (5th Cir. 1990)).

Asserting that "there are no facts establishing that the claims alleged in the Complaint in this action arose out of any

-8-

activities of YWCA USA that were conducted in or directed to Texas,"[7] YWCA, USA argues that "specific jurisdiction over YWCA USA cannot be established."[8]  YWCA, USA explains that it

> has no responsibility for or control over any of the operations of YWCA Houston, its personnel, or its human resources activities.  YWCA USA plays no role in the implementation o[r] administration of any personnel and/or contracting policies, practices or procedures or any operations of YWCA Houston, including its operations delivering meals to the elderly (Cole Decl. ¶ 11). Specifically, YWCA USA did not retain, contract with, or employ, nor did it play any role in or have responsibility for or control over, the contracting by YWCA Houston of the services of Plaintiffs that gave rise to the allegations in the Complaint, nor did YWCA USA have any responsibility for or control over, the terms and conditions of the services provided by such Plaintiffs at any time relevant to the above-referenced Complaint.  (Cole Decl. ¶ 12)[9]

Citing Mink, 190 F.3d at 337, plaintiffs respond that the internet website that YWCA, USA maintains supports the court's exercise of specific jurisdiction.  In Mink the Fifth Circuit adopted a "sliding scale" to evaluate whether a nonresident defendant's Internet contacts are sufficient to subject it to the jurisdiction of the forum state.  Mink, 190 F.3d at 336 (citing Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D. Pa. 1997)).  See also Revell v. Lidov, 317 F.3d 467, 470 (5th Cir. 2002) (applying the Mink standard to a website selling journal

---

[7]YWCA, USA's Motion to Dismiss, Docket Entry No. 7, p. 6.

[8]Id. at 7.

[9]Id.

subscriptions and advertising). In <u>Mink</u> the Fifth Circuit explained that at one end of the scale is "a passive website that does nothing more than advertise on the Internet," which does not support a finding of minimum contacts. 190 F.3d at 336. At the other end of the scale are websites through which "a defendant clearly does business over the Internet by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the Internet. . .'" <u>Id.</u> (citing <u>Zippo</u>, 952 F.Supp. at 1124). Defendants that own or maintain such websites will be subject to the forum state's jurisdiction. <u>Id.</u> In the middle of the spectrum are instances where a defendant has allowed users "to exchange information with a host computer." <u>Id.</u> at 336. Whether the contacts generated by sites in this middle ground are sufficient to support a finding of minimum contacts "is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." <u>Id.</u> (citing <u>Zippo</u>, 952 F.Supp. at 1124).

Plaintiffs argue that YWCA, USA's Internet website supports the court's exercise of specific jurisdiction over YWCA, USA, but have not presented any argument or cited any evidence showing that any of the claims asserted in this action arose from or resulted from YWCA, USA's Internet contacts with Texas. Nor have plaintiffs disputed the assertions of YWCA, USA's CEO, Lorraine Cole, that YWCA, USA played no role in YWCA Houston's recruitment, retention,

or supervision of the plaintiffs in Houston.  Because plaintiffs have failed to cite any facts capable of establishing that any of the claims asserted in their Original Complaint arise out of or relate to YWCA, USA's Internet contacts with Texas, the court concludes that plaintiffs have failed to carry their burden of presenting a prima facie case that the exercise of specific jurisdiction is proper in this action.  See Quick Technologies, 313 F.3d at 343, and ICEE Distributors, 325 F.3d at 591.

(b)  General Jurisdiction

Where the cause of action is not related to or does not arise from the defendant's activities in the forum, the forum may still have general jurisdiction if the defendant's contacts with the forum are of a substantial, continuous, and systematic nature. Johnston v. Multidata Sys. International Corp., 523 F.3d 602, 609 (5th Cir. 2008) (citing Helicopteros Nacionales de Columbia, S.A. v. Hall, 104 S.Ct. 1868 (1984)).  This is a difficult test to meet because it requires evidence of extensive contacts between the defendant and the forum state that are substantial.  Id.  "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." Id. at 610 (quoting Moncrief Oil International Inc. v. OAO Gazprom, 481 F.3d 309, 312 (5th Cir. 2007)).  Under certain circumstances general jurisdiction may be exercised over a defendant who operates an interactive website, even absent any other contacts with the forum state.  See Mink, 190 F.3d at 336;

-11-

Revell, 317 F.3d at 470.  The sliding scale has three benchmarks:
(1) a passive website that merely provides information to the web
surfer; (2) a website with some interactive elements that allow for
information exchange; and (3) a website through which the host
engages in "repeated online contacts with forum residents over the
internet."  Revell, 317 F.3d at 470.  The first benchmark does not
make the host amenable to personal jurisdiction, but the third may.
Id.  Personal jurisdiction based on a website of the second sort
depends on "the extent of interactivity and nature of the forum
contacts."  Id.  In Revell the Fifth Circuit recognized that this
sliding scale approach

> is not well adapted to the general jurisdiction inquiry,
> because even repeated contacts with forum residents by a
> foreign defendant may not constitute the requisite
> substantial, continuous and systematic contacts required
> for a finding of general jurisdiction—in other words,
> while it may be doing business *with* Texas, it is not
> doing business *in* Texas.

317 F.3d at 471. (citing Access Telecom, Inc. v. MCI Telecomm.
Corp., 197 F.3d 694, 717 (5th Cir. 1999), cert. denied, 121 S.Ct.
275 (2000)).

Plaintiffs argue that

> [b]ased on the law and the facts of this case, YWCA USA
> is clearly on the end of the spectrum where personal
> jurisdiction is proper.  It actively does business over
> the internet through Persimmon Boutique by entering into
> contracts with residents of Texas.  These transactions
> involve the knowing and repeated transmission of computer
> files over the Internet.
>
> In addition, YWCA USA maintains employment
> information, trains, and supports YWCA Houston on

-12-

employment related matters.  [Plaintiffs' Ex. A, C & E].
When a viewer clicks on the "employment" tab of YWCA
Houston's website, it is redirected to YWCA USA's website
that lists available positions at local associations
through the United States.  [See Plaintiffs' Ex. E].[10]

The exhibits attached to plaintiffs' opposition are screenshots

from YWCA, USA's Internet website showing general information about

YWCA, USA, the "employment" tab, and a list of employment

opportunities at various locations, but not in Texas.[11]

YWCA, USA replies that

3.   The "Persimmon Boutique" page on the YWCA USA web
     site connects to an outside vendor who handles the
     sale of YWCA-branded merchandise.  Apart from the
     link posted on the YWCA USA web site, neither YWCA
     USA nor the outside vendor advertises or otherwise
     solicits business for the Persimmon Boutique web
     site or merchandise.  According to our vendor, in
     the last twelve months, the total sales by the
     Persimmon Boutique [web site] came to $17,923, of
     which $1,204 came from customers in Texas.

4.   The employment listings page on the YWCA USA web
     site serves only as a bulletin board.  Local
     associations may post job openings on the site if
     they choose to do so.  YWCA USA does not require
     local associations to use the site to post job
     openings, and plays no role in the local
     associations' hiring decisions.[12]

Applying the sliding scale approach that the Fifth Circuit has

adopted for analyzing personal jurisdiction based on Internet

_____

[10]Plaintiffs' Response, Docket Entry No. 10, pp. 4-5.

[11]Exhibits A, C, and E, respectively, attached to Plaintiffs'
Response, Docket Entry No. 10.

[12]Reply Declaration of Dr. Lorraine Cole in Support of
Defendant Young Women's Christian Association of the United States
of America, Inc.'s Motion to Dismiss, Docket Entry No. 11-1, p. 2
¶¶ 3-4.

websites, the question of general jurisdiction does not present a difficult question in this case because most — if not all — of the content on YWCA, USA's website falls into the "passive website" category.  Undisputed evidence establishes that YWCA, USA's website includes general information about its organization, the ability to buy YWCA-branded products, and employment opportunities at various YWCA member organizations throughout the United States.  But there is no evidence that any member organization from Texas has ever posted an employment opportunity on the website.

The YWCA, USA website contains a portal that allows viewers to purchase YWCA-branded products, but the undisputed evidence establishes that the portal connects to an outside vendor that handles the sale of YWCA-branded merchandise.  There is no evidence that the YWCA, USA transacts business with Texas residents through its Internet website.  The mere existence of a website through which customers in Texas or elsewhere may theoretically purchase YWCA-branded merchandise is not evidence of substantial, continuous, and systematic contacts required for a finding of general jurisdiction.  Moreover, even if the Internet sales of YWCA-branded merchandise to Texas residents are considered as evidence of contact between YWCA, USA and Texas, the volume of sales to Texas residents ($1,204 out of $17,923 in the last twelve months) is too small to constitute the type of "substantial" contact required to support the exercise of this court's general jurisdiction over YWCA, USA.

YWCA, USA's website also contains a portal that allows viewers to see employment opportunities, but the undisputed evidence is that this portal merely connects to a message board to which member organizations can — but are not required — to post employment opportunities.  There is no evidence that viewers can use YWCA, USA's Internet website to apply for any of the employment opportunities posted on the message board, or otherwise exchange information with YWCA, USA, or any of its member organizations. Nor is there any evidence that YWCA Houston, or any other member organization from Texas has ever posted employment opportunities on the message board.  The mere existence of a website through which employment seekers in Texas or elsewhere may view employment opportunities at YWCA-member organizations is not evidence of substantial, continuous, and systematic contacts required for a finding of general jurisdiction.

Although maintenance of an Internet website is, in a sense, a continuous presence everywhere in the world, the cited contacts of YWCA, USA with Texas are not in any way substantial, systematic, or continuous.  <u>Revell</u>, 317 F.3d at 471 (citing <u>Wilson</u>, 20 F.3d at 650-51) (finding no personal jurisdiction over individual defamation defendants where the defendants did not conduct regular business in Texas and did not make a substantial part of their business decisions in Texas)).

YWCA, USA's contacts with Texas are in stark contrast to the facts of the Supreme Court's seminal case on general jurisdiction,

-15-

Perkins v. Benguet Consolidated Mining Co., 72 S.Ct. 413 (1952).
In Perkins a Philippine corporation temporarily relocated to Ohio.
The corporation's president resided in Ohio, the records of the
corporation were kept in Ohio, director's meetings were held in
Ohio, accounts were held in Ohio banks, and all key business
decisions were made there.  YWCA, USA's internet presence in Texas
quite obviously falls far short of this standard.  Here, the
evidence is that YWCA, USA maintains an Internet website that
provides information about YWCA, USA and its member organizations,
and provides portals through which viewers can purchase YWCA-
branded merchandise from an outside vendor and view employment
opportunities at member organizations throughout the United States.
Maintenance of a passive website for advertising purposes does not
subject a foreign company to a forum's jurisdiction absent
additional contacts.  Mink, 190 F.3d at 336-37.  YWCA, USA does not
directly market sales efforts to Texas-based customers, and it only
derives a small portion of its Internet sales revenue from Texas-
based customers.  Accordingly, the court concludes that YWCA, USA's
contacts with Texas via its Internet website are not sufficiently
continuous, systematic, or substantial to give rise to general
jurisdiction.

     2.   Fair Play and Substantial Justice

     Having concluded that plaintiffs have failed to make a prima
facie showing that YWCA, USA had minimum contacts with the State of

Texas and that the claims asserted in Plaintiffs' Original Complaint arise from or relate to any contacts that YWCA, USA has had with Texas, the court need not decide whether subjecting YWCA, USA to its jurisdiction would violate "traditional norms of fair play and substantial justice." <u>International Shoe</u>, 66 S.Ct. at 158.

## IV.  Conclusion and Order

For the reasons explained above, Defendant Young Women's Christian Association of the United States of America, Inc.'s Motion to Dismiss (Docket Entry No. 7) is **GRANTED**.  Defendant Young Women's Christian Association of the United States of America, Inc. is **DISMISSED** for lack of personal jurisdiction.

**SIGNED** at Houston, Texas, on this 1st day of October, 2010.

SIM LAKE
UNITED STATES DISTRICT JUDGE